# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## JANUARY 1999 SESSION



FILED

February 17, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 02C01-9802-CR-00051 |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | HON. CHRIS CRAFT, |
| CEDRIC DICKERSON, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Felony Murder, |
| | ) | Aggravated Robbery) |

**FOR THE APPELLANT:**

**A.C. WHARTON, JR.**
Shelby County Public Defender

**TONY N. BRAYTON**
**(Appeal Only)**
Assistant Public Defender
201 Poplar, Suite 201
Memphis, TN 38103-1947

**WILLIAM C. MOORE, JR.**
**(Trial Only)**
Assistant Public Defender
201 Poplar, Suite 201
Memphis, TN 38103-1947

**FOR THE APPELLEE:**

**PAUL G. SUMMERS**
Attorney General and Reporter

**DOUGLAS D. HIMES**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**WILLIAM L. GIBBONS**
District Attorney General

**LORRAINE CRAIG**
Assistant District Attorney General
201 Poplar, Suite 301
Memphis, TN 38103-1947

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY,**
**JUDGE**

**OPINION**

The defendant, Cedric Dickerson, appeals as of right his convictions by a Shelby County jury of felony murder and aggravated robbery. The defendant waived jury sentencing and received a sentence of life without the possibility of parole for felony murder, concurrent with an eleven (11) year sentence for aggravated robbery. On appeal, he questions (1) the sufficiency of the evidence used to convict him, and (2) the aggravating circumstances used to impose a sentence of life without the possibility of parole. Finding no error below, we AFFIRM the judgment of the trial court.

**FACTS**

The victim, Samuel Bumpus, was killed by three (3) shotgun blasts as he lay in bed in the early morning hours of February 1, 1996. Jermaine Harris discovered the victim at approximately 6:15 a.m., when he entered the apartment to borrow the victim's car. Harris testified that the door was ajar when he arrived. When he subsequently found the victim on the bedroom floor under a mattress, he called the police.

Harris was in the victim's apartment twice the previous evening, once to borrow the victim's car and again to return the keys. Harris saw a twelve (12) gauge shotgun in the victim's apartment the previous evening, but did not see one when he returned that morning.

On the evening prior to being killed, the victim allowed the defendant, also known as "Scarface," and his friend, Derrick Starks, to play video games in his apartment. Sheila Brown testified she observed the defendant and Starks in the victim's apartment that night. Brown made several visits to the apartment that night to purchase crack cocaine. Brown initially asked the defendant for crack,

2

but he stated that he had none. She saw the defendant holding a shotgun and heard the victim instruct him to put it down several times. After his requests were ignored, the victim took the shotgun from the defendant and placed it under his bed. During a later visit that night, Brown observed the victim discover the shotgun had been moved and exclaim, "[b]ring my gun, Scarface, damn." The victim then fell asleep without retrieving the shotgun.

Brown returned to the victim's apartment fifteen minutes later with a friend. She discovered the open door and could see that the victim's bed was disturbed. Brown then left the apartment and shortly thereafter saw the police approaching the apartment with Harris. Later that morning, the defendant sold crack to Brown that was in a package similar to that the victim had sold her the previous night.

Aaron Newman lived in the same apartment complex as the victim. Newman allowed the defendant's brother-in-law, William Green, and his family to sleep in his apartment. Around 6:00 a.m. on February 1, 1996, Newman let the defendant and Starks into his apartment. The defendant told Newman that he had killed the victim and robbed him of some cash, a pager, some keys, and crack cocaine. The defendant told Newman that he shot the victim three times "[t]o see how it feel to kill a motherfucker."

Newman told the defendant to cut up the remaining shotgun shells and flush them down the toilet. Starks placed the shotgun under Newman's mattress. The defendant placed the stolen keys and pager in one of Newman's socks and threw it on the roof. The police recovered the sock on the roof several days later, and the victim's mother identified the contents as belonging to her son.

Several days later, Newman instructed the defendant to remove the

3

shotgun from his apartment. The defendant and his cousin, David Mitchell, removed the shotgun from Newman's apartment in a Christmas tree box. Mitchell took the weapon to his girlfriend's house where it was later recovered by the police.

William Green, the defendant's brother-in-law, testified that the shotgun recovered from Mitchell's girlfriend's house was his. Green stated that he loaned the shotgun to the victim's roommate, Antonio Hill. Contrary to the testimony of Newman, Green denied ever hearing the defendant admit killing the victim.

The defendant gave the police a five (5) page statement on February 7, 1996. In the statement and at trial, the defendant denied killing the victim. He admitted playing video games there, but stated that he and Starks left around 5:00 a.m. Defendant admitted going to Newman's apartment, but denied telling Newman he killed the victim. The defendant denied taking the victim's keys and pager or removing guns from Newman's house. Further, the defendant stated that the crack he sold Brown after the defendant's murder was his, not the victim's.

Based upon this evidence, the jury convicted the defendant of first degree murder in perpetration of robbery and aggravated robbery.

### SUFFICIENCY OF THE EVIDENCE

The defendant asserts that the evidence was insufficient to support the jury's guilty verdicts. Specifically, he contends that the evidence only proves that he had the same opportunity to kill and rob the victim as at least two others, Aaron Newman and Sheila Brown. Therefore, he claims, a rational jury could not have found him guilty of the offenses beyond a reasonable doubt.

4

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996); State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984).

The jury heard testimony from all relevant witnesses in this case. They chose to believe the testimony of Harris, Brown, Newman, and Mitchell over that of the defendant. The testimony of each state witness corroborated the testimony of the other state witnesses. The defendant's testimony was corroborated by his brother-in-law. The jury's decision to reject the defense testimony was within its discretion.

This issue is without merit.

## SENTENCING

The defendant contends that the trial court relied upon inappropriate aggravating circumstances in arriving at sentence of life imprisonment without the possibility of parole. The defendant asserts that the evidence is insufficient to support circumstance (5), that the murder was "especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death." He also asserts that circumstance (7), that the murder was committed during the commission of a robbery, may not be used to enhance a felony murder conviction.

5

**A.**

The trial court found beyond a reasonable doubt that the murder was especially heinous and atrocious in that it involved serious physical abuse beyond that necessary to produce death. *See* Tenn. Code Ann. § 39-13-204(i)(5).

The proof at trial revealed that the victim was shot three (3) times with a shotgun. He was shot in the chest, the forehead, and in the mouth. The chest wound was inflicted from the greatest distance, with the forehead and mouth wounds being inflicted at close range. Each shot would have been fatal according to the testimony of the pathologist, the forehead shot instantly so. The trial court, in applying this aggravating circumstance, stated "... this was monstrous to take this person who was already dead or was dying– was dying at the time-- heart was most likely still beating-- and just to put a shotgun in his mouth and pull the trigger was so monstrous." The trial court also noted that each of the wounds would have been fatal.

The trial court found that the victim was shot first in the chest from a distance, this shot paralyzing him. The victim was then shot at closer range in the head and then shot again by the defendant by placing the shotgun in the victim's mouth. Under the standard set forth in Jackson v. Virginia, *supra*, this is certainly a reasonable inference from the evidence introduced at trial. *See* State v. Williams, 690 S.W.2d 517, 530 (Tenn. 1985)(applying Jackson v. Virginia standard of review in determining sufficiency of the evidence to support application of aggravating circumstance).

In State v. Odom, 928 S.W.2d 18, 26 (Tenn. 1996), the Tennessee Supreme Court stated:

The word "serious" alludes to a matter of degree.

6

> The abuse must be physical, as opposed to mental, and it must be "beyond that" or more than what is "necessary to produce death." "Abuse" is defined as an act that is "excessive" or which makes "improper use of a thing," or which uses a thing "in a manner contrary to the natural or legal rules for its use."

*See also* State v. Nesbit, 978 S.W.2d 872, 887 (Tenn. 1998).

The trial court found that the blast from the shotgun placed inside the victim's mouth constituted "serious physical abuse beyond that necessary to produce death." Under the Odom standard, we agree this abhorrent act was of a sufficient degree to be "serious," was indeed physical as opposed to mental, was clearly beyond that necessary to produce death in view of the other wounds, and was, without question, excessive. We further agree that defendant's actions were heinous and atrocious.[1]

The defendant argues that post-death injuries may not be considered in determining whether there was "serious physical abuse beyond that necessary to produce death." He argues that the 1995 amendment to Tenn. Code Ann. § 39-13-204, which added the aggravating circumstance of mutilation of the body after death, evidences the legislative intent that the "serious physical abuse" circumstance is limited to pre-death abuse. *See* Tenn. Code Ann. § 39-13-204(i)(13). Odom declined to limit "serious physical abuse" to abuse inflicted before death. 928 S.W.2d at 25, n. 5. Although Odom predated the mutilation aggravating circumstance, we find no legislative intent to restrict "serious physical abuse" to pre-death injuries.

The evidence was sufficient to support the trial court's finding that the

---

[1] We also note that the sequence of shots would not necessarily be determinative of the application of this aggravating circumstance. Regardless of the sequence of the shots, the close range shotgun blast to the head as well as the in-the-mouth shotgun blast could constitute "serious physical abuse beyond that necessary to produce death." *See generally* State v. Nesbit, 978 S.W.2d 872, 887 (Tenn. 1998).

7

murder was heinous, atrocious, and involved serious physical abuse beyond that necessary to produce death.

**B.**

The defendant also challenges the use of the felony murder aggravating circumstance, alleging its use is a duplication of an essential element of the underlying offense. Felony murder may not be used as an aggravating circumstance in a death penalty case where the defendant is convicted of felony murder. *See* State v. Middlebrooks, 840 S.W.2d 317, 346 (Tenn. 1992). However, the Tennessee Supreme Court in State v. Butler, ___S.W.2d___,___ (Tenn. 1998), held "the felony murder aggravator (i)(7) can be used to enhance a sentence to life without the possibility of parole when the defendant is convicted of felony murder."[2]

This issue, therefore, is without merit.

**CONCLUSION**

For the reasons set forth above, the judgment of the trial court is AFFIRMED.

_____
**JOE G. RILEY, JUDGE**

---

[2] Although unnecessary for the disposition of this issue, we note that the felony murder aggravating circumstance was amended in 1995 to require a "knowing" murder. 1995 Public Acts, Chapter 377. The crime of felony murder does not require a "knowing" killing. *See* Tenn. Code Ann. § 39-13-202(a)(2) and (b)(Supp. 1995).

**CONCUR:**


_____
**DAVID G. HAYES, JUDGE**



_____
**JOHN EVERETT WILLIAMS, JUDGE**